**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| J.L., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 10-22 |
| | : | |
| Byron Murphy, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                            **JUNE 21, 2010**

      Presently before the Court is Defendant Diamond State Youth Inc.'s ("Diamond State") Motion for Summary Judgment. For the following reasons, Diamond State's Motion is denied.

**I.      INTRODUCTION**

      On September 23, 2008, Plaintiff J.L. ("J.L.") was assaulted and raped by non-party T.H. while working as an assistant athletic trainer[1] at John Dickinson High School in Wilmington, Delaware. At the time of the attack, T.H. was a minor who had numerous run-ins with the law dating back to April 2004, when he was twelve years old. T.H. was arrested for attacking J.L. and the matter is currently pending before the Superior Court of the State of Delaware. In the instant Motion, Diamond State seeks the dismissal of the claims and cross-claims asserted against it based on its contention that, as a matter of law, it did not have a duty to control or restrain T.H. on September 23, 2008.

---

[1] Plaintiff was a second year graduate student at the University of Delaware. She obtained the position through an externship program.

## II. BACKGROUND

According to the Complaint, between April 2004 and September 23, 2008, T.H. was arrested, charged, and/or adjudicated delinquent on no fewer than ten separate occasions for offenses such as assault, robbery, burglary, offensive touching, criminal trespass, felony theft, criminal mischief, and disorderly conduct. Throughout most of this time period, as a result of his criminal conduct and behavior, T.H. was under the custody, control, and detention of Defendant Division of Youth Rehabilitative Services ("DYRS"),[2] Diamond State,[3] and various institutions.

As of September 1, 2008, T.H. was on probation and under the supervision, custody, and control of DYRS. In addition, at this time, he was a student at one of Defendant Red Clay Consolidated School District's ("Red Clay") schools, known as The Central School.[4] During his enrollment at The Central School, T.H. was permitted to participate on the varsity football team at John Dickinson High School – another school in the Red Clay School District. T.H. was regularly transported from The Central School to John Dickinson High School for football practice.[5]

Per the Complaint, on September 11, 2008, T.H. broke into the residence of a 13-year-old

---

[2] DYRS provides services to youth in Delaware who have been adjudicated delinquent and ordered by courts to receive rehabilitative services.

[3] Diamond State is a Delaware non-profit corporation that owns and manages a residential facility known as the Fiske Academy at Camelot (formerly known as the Camelot Home for Boys). The facility houses juvenile boys awaiting processing, adjudication, and release from Delaware's court system and operates as a non-secure detention facility pursuant to a contract with DYRS.

[4] According to the Complaint, The Central School's student population consists of students requiring special educational, behavioral, and disciplinary needs.

[5] There appears to be a factual dispute in this case regarding which period of time T.H. was permitted to attend football practice at John Dickinson High School.

girl and proceeded to strangle and sexually assault her.[6] As a result of this incident, he was arrested and charged with first-degree assault and second-degree burglary. T.H. was remanded to the custody of Diamond State on September 11, 2008 by Order of the Family Court for the State of Delaware (the "Family Court").

Subsequently, on September 21, 2008, while residing at the Diamond State facility, Fiske Academy at Camelot, T.H. physically assaulted a juvenile boy at that facility. As a result of that incident, he was arrested and charged with third-degree assault. On September 22, 2008, by Order of the Family Court, T.H. was released to the custody of his mother.

On September 23, 2008, J.L. was present on John Dickinson High School grounds as part of her externship and T.H. was also present for football practice. At approximately 6:30 p.m., T.H. allegedly followed J.L. into the girl's locker room and coach's office located inside the locker room. After J.L. exited a restroom in the office, T.H. allegedly physically attacked her and repeatedly raped her on the office floor.[7] J.L. was subsequently transported to Christiana Hospital where she was admitted and treated for her injuries to her shoulder, back, and pelvis, and examined by a forensic nurse for evidence collection purposes related to the rape. Subsequently, T.H. was arrested and charged with first-degree rape and third-degree assault. At the time of the Complaint, he was awaiting trial as an adult in Delaware's Superior Court in connection with the alleged crime.

J.L. commenced this action through a Complaint filed on January 8, 2010. Along with

---

[6] It is unclear where T.H. was living at the time of this incident.

[7] J.L. contends that the Delaware State Police officer assigned to John Dickinson High School was not on school premises at the time of the alleged attack as required by district and school policy.

Diamond State, the Complaint names Byron Murphy, Michael Simmons, Mervin Daugherty, and Red Clay (collectively, the "School District Defendants") as Defendants, based upon their respective roles in establishing and maintaining the policies, rules, and regulations of The Central School and John Dickinson High School.  The Complaint also names Carlyse Giddins and the State of Delaware's DYRS (collectively, the "DYRS Defendants") as Defendants, based upon their alleged failure to control or reform T.H.

J.L.'s Complaint contains the following Counts:  (1) Count I:  Violation of Substantive Due Process pursuant to 42 U.S.C. § 1983 – State Created Danger (v. All Defendants); (2) Count II:  Violation of Substantive Due Process pursuant to 42 U.S.C. § 1983 – Failure to Train and Maintenance of Custom, Policies, or Practices (v. All Defendants); (3) Count III:  Violation of Title IX of 20 U.S.C. § 1681 (v. School District Defendants); (4) Count IV:  Negligence (v. School District Defendants); (5) Count V:  Gross Negligence/Wanton Disregard (v. School District Defendants); (6) Count VI:  Negligence (v. DYRS Defendants and Diamond State); and (7) Count VII:  Gross Negligence/Wanton Disregard (v. DYRS Defendants and Diamond State).

On February 2, 2010, Diamond State filed an Answer to the Complaint and did not file any cross-claims against any other Defendant.  On March 15, 2010, the School District Defendants filed their Answer, which included cross-claims against Diamond State and the DYRS Defendants.  Also, on March 15, 2010, the Court approved a stipulation to dismiss Counts I and II against DYRS.  On this same date, the DYRS Defendants filed a Motion to Dismiss the remainder of the Counts against them.[8]  On March 23, 2010, the DYRS Defendants answered the School District's cross-claim.

---

[8] This Motion will be addressed via a separate Memorandum and Order.

**III.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12

(E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

**IV.   DISCUSSION**

   **A.   Plaintiff's Claims Against Diamond State**

As an initial matter, at this stage of the litigation and based upon Plaintiff's theory of the case, she has shown that Diamond State acted under "color of state law" in regard to her § 1983 claims. Private parties can only be held liable under § 1983 when they have acted under color of state law. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). "'Deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the defendants] so that the action of the latter may fairly be treated as that of the State itself.'" Adonai-Adoni v. City of Phila., No. 07-5485, 2009 WL 961218, at *3 (E.D. Pa. Mar. 31, 2009) (citing Mark, 51 F.3d at 1142).

Specifically, a private entity can only be sued under § 1983 where: "(1) it has exercised powers that are traditionally the exclusive prerogative of the State; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights; (3) the State has permitted a private party to substitute his judgment for that of the State; or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity. Id. at 3-4 (citations omitted). Here, Diamond State clearly acted under color of state law through its contact with Delaware's DYRS through which it accepted custody of and controlled juveniles awaiting processing, adjudication, and release from Delaware's court system. At a minimum, these are powers that are traditionally exclusively reserved for the state itself. Plaintiff's claims relate to Diamond State's alleged action or inaction during the time period T.H. was residing at

Diamond State.

In addition, at this stage in the litigation, the Court rejects Diamond State's argument that it is entitled to summary judgment because it did not have custody of T.H. on September 23, 2008, the date of the alleged attack on J.L.  Significantly, a substantial number of genuine issues of material fact are in dispute that relate to the elements of Plaintiff's § 1983 and state law claims against Diamond State.  For example, as Plaintiff notes, these issues include, but are not limited to:  (1) whether Diamond State was aware of and provided T.H. with prescribed medications related to his mood and behavior during the time he resided at the Diamond State facility; (2) whether the administration of medication was properly supervised; (3) whether Diamond State was aware of and involved in T.H.'s participation in the football program at John Dickinson High School; (4) whether Diamond State had adequate knowledge of T.H.'s background and whether its knowledge or lack thereof had any impact on its control of him; (5) whether Diamond State followed proper procedures in supervising T.H.'s behavior; (6) whether Diamond State shared adequate information with the Family Court on September 22, 2008; and (7) whether Diamond State fulfilled any obligations it may have had after T.H. was removed from its facility.[9]  Therefore, summary judgment is inappropriate at this time.

### B.     The School District Defendants' Cross-Claims Against Diamond State

Diamond State also moves for summary judgment on the School District Defendants' cross-claims.  Specifically, the School District Defendants allege:  (1) that they are entitled to

---

[9] Plaintiff has adequately established these genuine issues of material fact at this juncture. Further, pursuant to Federal Rule of Civil Procedure 56(f), she has appropriately provided this Court with an affidavit that supports why she cannot present additional information to support her opposition to the Motion.  Specifically, because it is early in the case and based on the ongoing criminal matter, discovery has been limited.  (Pl.'s Aff. Supp. Opp. Mot. Summ. J.)

indemnification from Diamond State and the other Defendants, if they are held liable, on the grounds that Diamond State and the other Defendants' conduct was the proximate cause of the alleged injuries and damages, and that the School District could only be held secondarily liable; and (2) that in the event that any School District Defendant is held primarily liable for the injury or damage alleged by Plaintiff, then Diamond State or the other Defendants' alleged wrongful acts were contributing causes, and that each School District Defendant is entitled to contribution in any amount which may be required to be paid for any wrongful act, based upon the relative degrees of fault determined pursuant to Delaware's Uniform Contribution Among Tortfeasor's Law ("UCATL"), 10 Del. C. §§6301-6308.  (School Dist. Defs.' Cross-Claim at ¶¶ 26-27.)

### 1. Contribution

The right to contribution is created by statute in Delaware.  10 Del. C. §§ 6301-6308. Pursuant to the UCATL, "joint tort-feasors" are "2 or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  Id. § 6301.  Further, under the UCATL, "[a] pleader may . . . state as a cross-claim against a co-party any claim that the co-party is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."  Id. § 6306. In this case, because Diamond State may be held jointly liable with the School District Defendants, it was certainly appropriate for the School District Defendants to make a cross-claim for contribution.

Diamond State argues:  "Because Diamond State had no control over T.H. at the time of the assault upon [J.L.], Diamond State could not and did not act together with any other defendants to cause plaintiff's injuries, and has no liability for those injuries.  (Diamond State's

Br. Supp. Mot. Summ. J. at 18.) However, as the above-mentioned genuine issues of material fact indicate, it is premature at this stage of the litigation to conclude that Diamond State cannot be held jointly liable with the School District Defendants. Thus, summary judgment is denied in regard to the School District Defendants' cross-claim for contribution.

### 2. Indemnification

Pursuant to Delaware law, a right to indemnity may arise through contractual or equitable grounds. N.Z. Kiwifruit Mktg. Bd. v. City of Wilmington, 825 F. Supp. 1180, 1191 (D. Del. 1993). In this case, there is no evidence of contractual grounds for indemnity. Thus, the School District's cross-claim rests on equitable indemnity.

The School District Defendants' claim for equitable indemnification is based on the theory that Diamond State "played an active role in the events leading up to Plaintiff's assault and that it may have effectively passed its own negligence on to the School District Defendants." (School District Defs.' Br. Opp. Mot. Summ. J. at 6.) For example, the School District Defendants question whether Diamond State had a duty to report T.H.'s assaultive behavior or his September 21, 2008 arrest, and if so, whether they adequately fulfilled any reporting duty. The School District Defendants direct the Court's attention to a Delaware court that recognized the right to such indemnification. Specifically, in Ianire v. University of Delaware, the Delaware Superior Court stated:

> The area in which a party held liable for negligence may pass that liability on to another negligent party is closely circumscribed. It encompasses a group of special situations and relationships where it has seemed reasonable to impose an alternate responsibility on a party seen to have played the active role in the negligence situation in favor of one who is made answerable to the injured party, but whose part in the event is passive or arises from the effect of public policy, contract, or status.

9

255 A.2d 687, 692 (Del. Super. Ct. 1969). In this case, based on the many genuine issues of material fact surrounding Diamond State's potentially relevant obligations and conduct, summary judgment is inappropriate at this point in the litigation in regard to the School District Defendants' cross-claim for indemnification.

For the reasons set forth above, the Court finds that summary judgment in Diamond State's favor is inappropriate in regard to J.L.'s claims or the School District Defendants' cross-claims. Many genuine issues of material fact exist at this early stage of the discovery process. Diamond State may move to renew its Motion once the record is further developed.

An appropriate Order follows.