## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| J.L., | : CIVIL ACTION |
| Plaintiff, | : |
| v. | : No. 10-22 |
| Byron Murphy, et al., | : |
| Defendants. | : |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                      **JUNE 28, 2010**

Presently before the Court are Defendants Division of Youth Rehabilitative Services ("DYRS") and Carlyse Giddins's ("Giddins") (collectively, the "DYRS Defendants") Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the DYRS Defendants' Motions are granted.

### I.   INTRODUCTION

On September 23, 2008, Plaintiff J.L. ("J.L.") was assaulted and raped by non-party T.H. while working as an assistant athletic trainer[1] at John Dickinson High School in Wilmington, Delaware. At the time of the attack, T.H. was a minor who had numerous run-ins with the law dating back to April 2004, when he was twelve years old. T.H. was arrested for attacking J.L. and the matter is currently pending before the Superior Court of the State of Delaware. In the instant Motions, the DYRS Defendants seek the dismissal of the claims and cross-claims asserted against them based on Eleventh Amendment and sovereign immunity grounds.

---

[1] Plaintiff was a second-year graduate student at the University of Delaware. She obtained the position through an externship program.

## II. BACKGROUND

According to the Complaint, between April 2004 and September 23, 2008, T.H. was arrested, charged, and/or adjudicated delinquent on no fewer than ten separate occasions for offenses such as assault, robbery, burglary, offensive touching, criminal trespass, felony theft, criminal mischief, and disorderly conduct. Throughout most of this time period, as a result of his criminal conduct and behavior, T.H. was under the custody, control, and detention of DYRS,[2] Diamond State Youth, Inc. ("Diamond State"),[3] and various institutions.

As of September 1, 2008, T.H. was on probation and a student at one of Defendant Red Clay Consolidated School District's ("Red Clay") schools known as The Central School.[4] During his enrollment at The Central School, T.H. was permitted to participate on the varsity football team at John Dickinson High School – another school in the Red Clay School District. T.H. was regularly transported from The Central School to John Dickinson High School for football practice.[5]

---

[2] DYRS provides services to youth in Delaware who have been adjudicated delinquent and ordered by courts to receive rehabilitative services. Notably, Giddins is the Director of DYRS.

[3] Diamond State is a Delaware non-profit corporation that owns and manages a residential facility known as the Fiske Academy at Camelot (formerly known as the Camelot Home for Boys). The facility houses juvenile boys awaiting processing, adjudication, and release from Delaware's court system and operates as a non-secure detention facility pursuant to a contract with DYRS.

[4] According to the Complaint, The Central School's student population consists of students requiring special educational, behavioral, and disciplinary needs.

[5] There appears to be a factual dispute in this case regarding which period of time T.H. was permitted to attend football practice at John Dickinson High School.

Per the Complaint, on September 11, 2008, T.H. broke into the residence of a 13-year-old girl and proceeded to strangle and sexually assault her.[6] As a result of this incident, he was arrested and charged with first-degree assault and second-degree burglary. T.H. was placed in the custody and control of DYRS and sent to a Diamond State facility on September 11, 2008 by Order of the Family Court for the State of Delaware (the "Family Court").

Subsequently, on September 21, 2008, while residing at the Diamond State facility, Fiske Academy at Camelot, T.H. physically assaulted a juvenile boy at that location. As a result of that incident, he was arrested and charged with third-degree assault. On September 22, 2008, by Order of the Family Court, T.H. was released to the custody of his mother.

On September 23, 2008, J.L. was present on John Dickinson High School grounds as part of her externship and T.H. was also present for football practice. At approximately 6:30 p.m., T.H. allegedly followed J.L. into the girl's locker room and coach's office located inside the locker room. After J.L. exited a restroom in the office, T.H. allegedly physically attacked her and repeatedly raped her on the office floor.[7] J.L. was subsequently transported to Christiana Hospital where she was admitted and treated for injuries to her shoulder, back, and pelvis, and examined by a forensic nurse for evidence collection purposes related to the rape. Subsequently, T.H. was arrested and charged with first-degree rape and third-degree assault. At the time of the Complaint, he was awaiting trial as an adult in Delaware's Superior Court in connection with the alleged crime.

---

[6] It is unclear where T.H. was living at the time of this incident.

[7] J.L. contends that the Delaware State Police officer assigned to John Dickinson High School was not on school premises at the time of the alleged attack as required by district and school policy.

J.L. commenced this action through a Complaint filed on January 8, 2010.  Along with Diamond State, the Complaint names Byron Murphy, Michael Simmonds, Mervin Daugherty, and Red Clay (collectively, the "School District Defendants") as Defendants, based upon their respective roles in establishing and maintaining the policies, rules, and regulations of The Central School and John Dickinson High School.  The Complaint also bring claims against the DYRS Defendants based upon, among other things, their alleged failure to control or reform T.H. while he was in their custody and for permitting T.H. to be released to his mother after the September 21, 2008 incident.

J.L.'s Complaint contains the following Counts:  (1) Count I:  Violation of Substantive Due Process pursuant to 42 U.S.C. § 1983 – State Created Danger (v. All Defendants); (2) Count II:  Violation of Substantive Due Process pursuant to 42 U.S.C. § 1983 – Failure to Train and Maintenance of Custom, Policies, or Practices (v. All Defendants); (3) Count III:  Violation of Title IX of 20 U.S.C. § 1681 (v. School District Defendants); (4) Count IV:  Negligence (v. School District Defendants); (5) Count V:  Gross Negligence/Wanton Disregard (v. School District Defendants); (6) Count VI:  Negligence (v. DYRS Defendants and Diamond State); and (7) Count VII:  Gross Negligence/Wanton Disregard (v. DYRS Defendants and Diamond State). In her Complaint, J.L. requests monetary relief for extreme pain and suffering, compensatory damages, punitive damages, costs of suit, attorneys' fees under 42 U.S.C. § 1988 and 20 U.S.C. § 1681, and any other relief the Court may deem appropriate.

On February 2, 2010, Diamond State filed an Answer to the Complaint.  On March 15, 2010, the School District Defendants filed their Answer, which included cross-claims against Diamond State and the DYRS Defendants.  Also, on March 15, 2010, the Court approved a

stipulation to dismiss Counts I and II against DYRS.  On this same date, the DYRS Defendants filed the instant Motion.[8]

### III.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."  Fed. Realty Inv. Trust v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. Jan. 21, 2000) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)).  The district court, when reviewing a motion to dismiss for lack of subject matter jurisdiction, "must accept as true the allegations contained in the plaintiff's complaint, except to the extent federal jurisdiction is dependent on certain facts."  Id. (citing Haydo v. Amerikohl Mining, Inc., 830 F.2d 494, 496 (3d Cir. 1987)).  The district court is not confined to the face of the pleadings when deciding whether subject matter jurisdiction exists.  Id. (citing Armstrong World Indus. v. Adams, 961 F.2d 405, 410 n.10 (3d Cir. 1992)).  "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings."  Id. (citing Berardi v. Swanson Mem'l Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990)).  In the case where the defendant attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated."  Id.  "A conclusory response or a restatement of the allegations of the complaint is not sufficient."  Id. (citing Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982)).

---

[8] On April 28, 2010, Diamond State filed a Motion for Summary Judgment regarding Plaintiff's claims and the School District Defendants' cross-claims.  In a June 21, 2010 Order and Memorandum, we denied Diamond State's Motion.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corporation v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).

Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

In Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing

6

Twombly, 550 U.S. at 570).  The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations.  Phillips, 515 F.3d at 231.  Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff.  Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## IV.   DISCUSSION

### A.   Plaintiff's § 1983 Claims Against Giddins

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Notably, even though the Amendment does not explicitly bar suits against a state by its own citizens, the Supreme Court has held that a state is immune from suits

brought in federal courts by its own citizens as well as by citizens of another state. Holman v. Walls, 648 F. Supp. 947, 953 (D. Del. 1986) (citing Hans v. Louisiana, 134 U.S. 1 (1890)). In sum, "the Eleventh Amendment protects against suits brought directly against a state in federal court . . . and the state's [immunity] extends to a state agency that is an arm of the state government." Walton v. Div. of Revenue, 961 F. Supp. 97, 99 (D. Del. 1997). Relatedly, "a damage suit against a state officer in his or her official capacity as a representative of the state's action and liability, is deemed an action against the state" and is barred by the Eleventh Amendment. Id.

> As the Supreme Court has stated:
>
> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989). The Supreme Court has found that Congress did not intend to override a state's Eleventh Amendment immunity when it enacted § 1983. Quern v. Jordan, 440 U.S. 332, 338 (1979). Moreover, a state official acting in his or her official capacity is immune from suit pursuant to § 1983 because he or she is not considered a "person" under the statute. Will, 491 U.S. at 71. Finally, even though "State officials sued in their official capacities for monetary damages can assert Eleventh Amendment immunity . . . State officials cannot assert such immunity when sued for monetary damages in their personal capacities." Jolly v. Cook, No. 99-73, 2001 WL 34368382, at *6 (D. Del. Mar. 22, 2001).

Here, as J.L. conceded in her Complaint, DYRS is an agency of the State of Delaware.

(Compl. ¶ 8 ("Defendant Division of Youth Rehabilitative Services, hereinafter Defendant DYRS, is an agency of the State of Delaware."))  Thus, DYRS is treated as the state itself for immunity purposes and that immunity is extended to officials such as Giddins acting in their official capacities.  <u>Rodriguez v. Stevenson</u>, 243 F. Supp. 2d 58, 63 (D. Del. Dec. 27, 2002).  Significantly, neither the State of Delaware nor Congress have waived or abrogated Eleventh Amendment immunity to § 1983 claims.  Moreover, as indicated above, the Supreme Court has clarified that such immunity still exists for § 1983 claims.

The Third Circuit has directed that courts should look to the complaint and the course of proceedings to determine whether an individual is sued in his official capacity, personal capacity, or both.  <u>Melo v. Hafer</u>, 912 F.2d 628, 635 (3d Cir. 1990).  Specifically, "[a] defendant being sued in his or her personal capacity should be given adequate notice that his or her personal assets are at stake."  <u>Id.</u> at 636 n.7.  In this case, based on the caption of the Complaint and the allegations against Giddins, it is clear that Giddins has merely been sued in her official capacity.

As an initial matter, the caption of the Complaint names Giddins as a Defendant as follows: "Carlyse Giddins, in her capacity a[s] Director of Division of Youth Rehabilitative Services."  (Pl.'s Compl. at 1) This caption contains no notice that Giddins is being sued in her "individual" or "personal" capacity.  In contrast, it merely suggests she is being sued based on her position and the fact she is a figurehead a DYRS.

Moreover, Giddins's name is only specifically referenced in the Complaint in the identification section of the pleading and as part of a bald assertion that "Defendant DYRS, Defendant Giddins, and/or Diamond State [were] each intimately familiar with [T.H.'s]

propensity for violence." (Id. ¶¶ 7, 12.) As the DYRS Defendants point out, the allegations in the Complaint make no distinction between the claims against DYRS and Giddins, evidencing that the real party in interest is the state agency for whom Giddins performs her job duties. Finally, the allegations in the Complaint fail to reference any of Giddins's personal conduct outside of her general job duties and fail to draw any connection between Giddins's conduct and the incident at issue in this case. Thus, Plaintiff's allegations can only be read as alleging claims against Giddins in her official capacity. L.C. 1 v. Delaware, No. 07-675, 2008 WL 5381433, at *5 (D. Del. Dec. 23, 2008) ("No act attributed by the complaint to [the state official] is not also attributed to one or more of the State Agency Defendants . . . . Therefore, she is immune from suit for the alleged violations of § 1983 and these counts . . . must be dismissed as against her."). As a result, the § 1983 claims asserted against Giddins are barred by the Eleventh Amendment.[9]

### B. The Remainder of the Claims Against the DYRS Defendants

J.L.'s state law claims against the DYRS Defendants (Counts VI and VII) must also be dismissed pursuant to the Eleventh Amendment and the doctrine of sovereign immunity. L.C. 1, 2008 WL 5381433, at *6 ("The state law claims against the State Defendants should also be dismissed. This is due to the Eleventh Amendment – which may provide immunity in federal court from claims that a state violated its own laws – and issues of comity and judicial economy.") Both DYRS and Giddins have only been sued in their official capacities. As a court in this District stated, "[w]here the state claims are against the agency or official in their official capacity . . . the Eleventh Amendment bars the exercise of federal jurisdiction and supplemental

---

[9] The original § 1983 claims against DYRS would have also been barred by the Eleventh Amendment if they were not dismissed by stipulation.

jurisdiction over the par[ties]." Marvel v. Snyder, No. 99-442, 2001 WL 830309, at * 10 (D. Del. July 24, 2001); see also Reiff v. Phila. County Court of Common Pleas, 827 F. Supp. 319, 325 ("Although the Court would normally have supplemental jurisdiction over these claims, 'neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment . . . . Since Eleventh Amendment immunity bars the federal courts from adjudicating claims when, as here, the state is the real party in interest . . . this Court may not exercise supplemental jurisdiction over the state claims."). Therefore, the Court will also dismiss J.L.'s state law claims against the DYRS Defendants.

In addition, the School District Defendants' cross-claims against the DYRS Defendants for indemnification and contribution must also be dismissed. As the Supreme Court has explained:

> The Eleventh Amendment forecloses . . . the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State . . . . [N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.

County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 251 (1985). "A state's Eleventh Amendment immunity extends as well to third-party claims for contribution or indemnity that fall within a federal court's ancillary jurisdiction." Holman, 648 F. Supp. at 954. The cross-claims do not contain any additional allegations or language that places Giddins on notice that she is being sued in her individual capacity. Thus, the DYRS Defendants are also entitled to immunity from the School District's cross-claims.

For the reasons set forth above, the Court finds that J.L's claims and the School District Defendants' cross-claims against the DYRS Defendants in their official capacities are dismissed.

An appropriate Order follows.